# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| LASANDRA HILLSON, STEVEN BOHLER, and ASHLEY SCHMIDT, individually and as representatives of the class, <br><br><br> Plaintiffs, <br><br> v. <br><br> KELLY SERVICES, INC., <br><br> Defendant. | Case No. 2:15-CV-10803-LJM-APP <br> Honorable Laurie J. Michelson <br> Magistrate Judge Anthony P. Patti |

## <u>DEFENDANT'S MOTION TO STAY</u>

Defendant Kelly Services, Inc. ("Kelly" or "Defendant") hereby moves the Court for an order staying all proceedings in this matter pending the decision of the U.S. Supreme Court in *Spokeo, Inc. v. Robins*, for which certiorari was granted on April 27, 2015.  The *Spokeo* petition presents a proposition of law that — if agreed with by the Supreme Court — will dispose of Plaintiffs' claims in the instant case. Thus, in the interests of judicial efficiency and the litigants' private interests, this action should be stayed.

Pursuant to Local Rule 7.1(a), counsel for Defendant conferred with Plaintiffs' counsel by telephone and email about this Motion.  By and through counsel, Plaintiffs oppose the relief sought in this Motion.

Respectfully submitted,


Dated:      May 22, 2015                SEYFARTH SHAW LLP

By:/s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr. (Admitted)
gmaatman@seyfarth.com
David J. Rowland (Admitted)
drowland@seyfarth.com
Pamela Q. Devata (Admitted)
pdevata@seyfarth.com
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Laura J. Maechtlen (Admitted)
lmaechtlen@seyfarth.com
Michael W. Stevens (Admitted)
mwstevens@seyfarth.com
Shireen Yvette Wetmore (Admitted)
swetmore@seyfarth.com
SEYFARTH SHAW LLP
560 Mission Street, 31st Floor
San Francisco, California  94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

Michael L. Weissman (P51437)
mweissman@fwslaw.com
FINKEL WHITEFIELD SELIK
32300 Northwestern Highway
Suite 200
Farmington Hills, MI  48334-1567
Telephone :  (248) 855-6500
Facsimile:  (248) 855-6501

ATTORNEYS FOR DEFENDANT
KELLY SERVICES, INC.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| LASANDRA HILLSON, STEVEN BOHLER, and ASHLEY SCHMIDT, individually and as representatives of the class, | |
| | Case No. 2:15-CV-10803-LJM-APP<br>Honorable Laurie J. Michelson<br>Magistrate Judge Anthony P. Patti |
| Plaintiffs, | |
| v. | |
| KELLY SERVICES, INC., | |
| Defendant. | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO STAY

19751493v.6

## <u>ISSUE PRESENTED</u>

Should the Court stay all proceedings in this matter pending the decision of the U.S. Supreme Court in *Spokeo, Inc. v. Robins*, No. 13-1339, a decision that will likely provide controlling precedent regarding whether Plaintiffs have standing to pursue their claims?

## PRINCIPAL AUTHORITIES

1.  *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)

2.  *Michael v. Ghee*, 325 F. Supp. 2d 829 (N.D. Ohio July 12, 2004)

3.  *Beydoun v. Holder*, No. 14-cv-13812, 2015 WL 631948 (E.D. Mich. Feb. 13, 2015)

4.  *Monaghan v. Sebelius*, No. 12-15488, 2013 WL 3212597 (E.D. Mich. June 26, 2013)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.   RELEVANT PROCEDURAL HISTORY AND BACKGROUND ................. 3
     A.    Procedural History Of The Instant Case ............................................ 3
     B.    The Supreme Court's Pending Decision In *Spokeo* ............................ 4

III.   LEGAL ARGUMENT ................................................................................. 6
     A.    Legal Standard .................................................................................... 7
     B.    A Stay Is Warranted Here .................................................................. 8
          1.    *Spokeo* Will Have A Dispositive Effect On Plaintiffs'
              Claims ...................................................................................... 8
          2.    A Stay Serves The Interests Of Judicial Economy ................... 12
          3.    The Public Interest Is Served By A Stay .................................. 14
          4.    The Plaintiffs Do Not Suffer Prejudice From A Stay .............. 14
          5.    Kelly Would Suffer Substantial Prejudice Absent A Stay ....... 16

IV.   CONCLUSION ......................................................................................... 19

19751493v.6

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beaudry v. TeleCheck Servs., Inc.*,
   579 F.3d 702 (6th Cir. 2009) ........................................................................5, 15

*Beydoun v. Holder*,
   No. 14-cv-13812, 2015 WL 631948 (E.D. Mich. Feb. 13, 2015) ..........11, 12, 13

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) .................................................................................6

*Doe v. Nat'l Bd. of Medical Examiners*,
   199 F.3d 146 (3d Cir. 1999) .................................................................................6

*Fontenot v. McCraw*,
   777 F.3d 741 (5th Cir. 2015) ...............................................................................5

*Johns v. Evergreen Presbyterian Ministries, Inc.*,
   826 F. Supp. 1050 (E.D. Tex. 1993)...................................................................10

*Kendall v. Employees Retirement Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009) .............................................................................5, 6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)..............................................................................7, 8, 15, 16

*LaSala v. Needham & Co., Inc.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005) ............................................................7, 16

*Marshel v. AFW Fabric Corp.*,
   552 F.2d 471 (2d Cir. 1977) ................................................................................7

*Michael v. Ghee*,
   325 F. Supp. 2d 829 (N.D. Ohio July 12, 2004).........................................*passim*

*Monaghan v. Sebelius*,
   No. 12-15488, 2013 WL 3212597 (E.D. Mich. June 26, 2013)...................10, 11

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948 (7th Cir. 2006) ...............................................................................5

*Ohio Envtl. Council v. U.S. Dist. Court*,
  565 F.2d 393 (6th Cir. 1977) ............................................................................7

*Peters v. St. Joseph Servs. Corp.*,
  No. 4:14-cv-2872, 2015 WL 589561 (S.D. Tex. Feb. 11, 2015) ........................5

*Raines v. Byrd,*
  521 U.S. 811 (1997)...........................................................................................6

*Robins v. Spokeo, Inc.*,
  742 F.3d 409 (9th Cir. 2014) .........................................................................4, 5

*Robins v. Spokeo, Inc.*,
  No. CV10-05306 ODW (AGRx), 2011 WL 11562151 (C.D. Cal. Sep. 19,
  2011) ................................................................................................................4

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012) .............................................................10

*Singleton v. Domino's Pizza,*
  Civ. No. 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ...........................13

*Smith et al. v. Triad of Alabama*,
  No. 1:14-cv-324-WKW-PWG (M.D. Ala. May 1, 2015) ...........................15, 16

*Smith v. Waverly Partners*,
  Civ. No. 3:10-CV-00028-RLV-DSC, 2012 WL 3645324 (W.D.N.C. Aug.
  23, 2012) ...................................................................................................12, 13

*Speer v. Whole Food Market Group, Inc.*,
  No. 8:14-cv-3035-T-26TBM, 2015 WL 2061665 (M.D. Fla. Apr. 29,
  2015) ..............................................................................................................15

*Spokeo, Inc. v. Robins*,
  No. 13-1339 .............................................................................................*passim*

## STATUTES

15 U.S.C. § 1681b(b)(2) .........................................................................................3

42 U.S.C. § 1983...................................................................................................9

## I.    __INTRODUCTION__

Defendant respectfully moves the Court to stay all proceedings in this action pending the upcoming decision of the U.S. Supreme Court in *Spokeo, Inc. v. Robins*, No. 13-1339.  The question presented by the petitioners in *Spokeo* involves a dispositive issue for the Plaintiffs in the instant case:  whether a party who suffered no concrete harm under the Fair Credit Reporting Act ("FCRA") has Article III standing.  The key fact to consider in deciding this Motion is that Plaintiffs in the instant case claim no actual damages.  If the Supreme Court reverses the Ninth Circuit, it is a near certainty that Plaintiffs will fall into the category of those individuals who cannot avail themselves of federal court jurisdiction merely by claiming a technical violation of a statute (without allegations of concrete harm).

Because of the substantial risk that the law governing the Plaintiffs' ability to prosecute their claims may change, this Court should exercise its inherent power to stay the proceedings in the interests of judicial economy and the private interests of the litigants.  Three key reasons decisively favor a stay.  First, the judicial resources of this Court should not be wasted on a case where there is at least a 50-50 probability that a higher court will rule within six months to a year that Plaintiffs do not have standing.  If this litigation proceeds while we await a ruling from the Supreme Court, this Court will likely address discovery disputes, and

depending on the case schedule, may even address dispositive motions and class certification issues.   Should the *Spokeo* petitioners prevail, all of those spent judicial and party resources, which will be substantial, will have been wasted.

Second, the respective hardships to the parties favor Kelly's position.  Based on information currently available to Defendant, this case involves an extraordinarily large pool of potential putative class members (likely approaching up to 300,000 individuals).  For reasons that will be explained below, determining who is or is not a putative class member will be an incredibly burdensome and expensive undertaking.  In other words, by proceeding in this litigation, Kelly will be required to expend hundreds of thousands (if not millions) of dollars defending this case and attempting to determine the identity of putative class members, conducting electronic discovery, and preparing an opposition to class certification in this action involving hundreds of thousands of putative class members.  All of those resources will be expended for naught if the Supreme Court finds that Plaintiffs lack standing.  The Plaintiffs, on the other hand, cannot identify any real hardship from stay.  To wit, ***they claim no concrete harm***.  Thus, having to wait another six months or a year to vindicate their claim is not prejudicial when they have suffered no actual damages to begin with.

Third, the public interest also favors Kelly's position.  Although there is admittedly a public interest in plaintiffs being able to expeditiously prosecute their

cases, the countervailing public interest is in saving limited judicial resources in cases such as this, where Plaintiffs may lack standing to assert their claims at all. Balancing these factors, this Court should enter a stay of proceedings in this case pending the Supreme Court's resolution of *Spokeo*.

## II.      RELEVANT PROCEDURAL HISTORY AND BACKGROUND

### A.      Procedural History Of The Instant Case

Plaintiffs filed their initial Complaint in the Northern District of California on July 18, 2014.  *See* No. 3:14-CV-03256-VC (N.D. Cal. Dkt. 1).   They subsequently filed their operative First Amended Complaint ("FAC") on August 19, 2014, *id.* Dkt. 10, and Defendant answered the FAC on October 14, 2014.  *Id.* Dkt. 35.  Pursuant to a forum selection clause, this case was transferred to the Eastern District of Michigan on March 3, 2015.  *Id.* Dkt. 52.

Plaintiffs allege that Defendant violated 15 U.S.C. § 1681b(b)(2) by including allegedly extraneous text on Kelly's Background Screening Notice, Disclosure, and Authorization form ("Form e336"), which gives notice to applicants and employees that Kelly may procure a consumer report on them and obtains their authorization to do the same.  *See* FAC ¶¶ 18, 23, 28 and its Exs. A, B, C.  Specifically, for approximately two years, certain versions of Form e336 in circulation contained a liability release related to the procurement of consumer reports, and a statement that the form did not constitute an employment contract.

Plaintiffs allege that this language violated the FCRA's purported requirement that a disclosure form consist "solely" of the disclosure.  *See* FAC ¶ 38.

Plaintiffs claim statutory and punitive damages and attorneys' fees, FAC ¶ 47, but have not stated an injury-in-fact, claim no concrete harm, and seek no actual damages.

### B.      The Supreme Court's Pending Decision In *Spokeo*

On April 27, 2015, the U.S. Supreme Court granted certiorari in *Spokeo, Inc. v. Robins*, No. 13-1339, and the Supreme Court will thereby address a legal question potentially dispositive of this action:  whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute. The Supreme Court's decision in *Spokeo* will directly address whether a plaintiff has standing to seek statutory damages under the FCRA, in the complete absence of any actual damages.

The district court dismissed the action in *Spokeo*, holding that a plaintiff does not have standing "where no injury in fact is properly pled."  *Robins v. Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL 11562151, at *1 (C.D. Cal. Sep. 19, 2011) (Exhibit A).  However, the Ninth Circuit reversed, holding that the "violation of a statutory right is usually sufficient injury in fact to confer

standing" and that "a plaintiff can suffer a violation of the statutory right without suffering actual damages." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412-13 (9th Cir. 2014).

In granting certiorari, the Supreme Court is poised to resolve a circuit split on this question. At present, the Fifth, Sixth, and Seventh Circuits agree with the Ninth Circuit's decision in *Spokeo*, and permit plaintiffs to maintain lawsuits without "injury-in-fact," based solely on an alleged statutory violation. *See, e.g.*, *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) ("the maintenance of accurate DPS driving records is a cognizable interest the invasion of which confers standing"); *but see Peters v. St. Joseph Servs. Corp.*, No. 4:14-cv-2872, 2015 WL 589561, at *5 (S.D. Tex. Feb. 11, 2015) (Exhibit B) (plaintiff's speculation that she suffers a risk of future harm is not sufficient for Article III standing in FCRA case); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705-07 (6th Cir. 2009) (allowing plaintiff to proceed with FCRA action despite lack of injury); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006) (statutory damages are available under the FCRA "without proof of injury.").

Comparatively, the Second, Third, and Fourth Circuits have held, consistent with the Supreme Court, that Congress cannot create standing by statute alone, and the mere deprivation of a statutory right is insufficient to confer standing. *See, e.g.*, *Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 121 (2d

Cir. 2009) (in ERISA matter, rejecting argument that deprivation of entitlement to fiduciary duty constitutes an injury-in-fact for purposes of standing); *David v. Alphin,* 704 F.3d 327, 338-39 (4th Cir. 2013) (rejecting the premise that mere deprivation of a statutory right is sufficient to constitute an injury-in-fact for Article III standing in ERISA matter); *Doe v. Nat'l Bd. of Medical Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury . . . Congress . . . cannot confer standing by statute alone.").[1]  *See also Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.")

## III.   <u>LEGAL ARGUMENT</u>

The Supreme Court's imminent decision in *Spokeo* could prove dispositive of Plaintiffs' claims.  Considering the substantial possibility that an upcoming change in law will block Plaintiffs' ability to bring their claims, this case should be stayed to promote judicial efficiency and conserve the litigants' resources. Because Plaintiffs do not allege concrete harm and seek only statutory damages, they cannot credibly claim prejudice from a stay.

---

[1]/    To the extent Plaintiffs dispute the applicability of these opinions to the instant case, these decisions form one half of the circuit split identified by the petitioners in *Spokeo.  See Spokeo, Inc. v. Robins*, No. 13-1339, Pet. for Writ of Certiorari at 10-11 (May 2014) (Exhibit C) (discussing *Kendall*, *David*, and *Doe*). In other words, the Supreme Court granted certiorari based on citation to these same authorities, indicating its perception of a precedential split.

A.    <u>**Legal Standard**</u>

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  "[T]he entry of such an order ordinarily rests with the sound discretion of the District Court." *Ohio Envtl. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977).  A district court may stay proceedings in order to allow a higher court in a separate case to settle questions of law that bear upon the matter to be stayed.  *See, e.g.*, *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977); *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 & n.39 (S.D.N.Y. 2005) (a court may, "in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed.").

Courts in the Sixth Circuit have interpreted *Landis* to focus on four factors to determine whether a stay is appropriate:  "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration."  *Michael v.*

*Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio July 12, 2004) (granting stay of proceedings pending Supreme Court review of another case because Supreme Court decision could mean that "plaintiffs' claims will be subject to dismissal in their entirety."). In addition to these four factors, the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

> **B.     A Stay Is Warranted Here**

> **1.     *Spokeo* Will Have A Dispositive Effect On Plaintiffs' Claims**

The Supreme Court's upcoming decision in *Spokeo* will decide, one way or the other, whether Plaintiffs have standing to pursue their claims. The question presented is directly on point: "Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." *Spokeo, Inc. v. Robins*, Pet. for Writ of Certiorari at i (Exhibit C). The plaintiff in *Spokeo*, like the instant Plaintiffs, sought statutory damages under the FCRA.[2]   Should the Court reverse

---

[2]/     Plaintiffs may attempt to distinguish *Spokeo* by claiming that some "informational injury" is sufficient to constitute a "concrete harm" and create standing for Plaintiffs in the instant case. That distinction is unavailing in light of the question presented by the *Spokeo* petition and the circuit split being resolved by that case. In addition, such an argument is belied by the Plaintiffs' complaint itself, even if Plaintiffs claim they did not receive the disclosure notice in a form to which they were supposedly statutorily entitled.   Nowhere in their FAC do

the Ninth Circuit, Plaintiffs will not be able to pursue FCRA claims, absent proof of actual damages.

On this point, *Michael v. Ghee* is instructive.  The plaintiffs in that case brought a class action pursuant to 42 U.S.C. § 1983, challenging aspects of a parole system in Ohio.  325 F. Supp. 2d at  832.  The Sixth Circuit had previously held that a certain procedural requirement was not a barrier to the plaintiffs' claims, but that decision was on review before the Supreme Court.  *Id.*  The district court in *Michael* found that the grant of certiorari could dispositively affect the plaintiffs' claims:  "If the Sixth Circuit's decision . . . is correct, then plaintiffs' claims are not subject to dismissal on this ground.  If, however, the Supreme Court reverses the Sixth Circuit, then plaintiffs' claims will be subject to dismissal in their entirety."  *Id.*  So too here:  if the Supreme Court reverses the Ninth Circuit's decision in *Spokeo*, the individual Plaintiffs' claims will be subject to dismissal, mooting their claims and those of the class they purport to represent.

Other district courts have reached the same conclusion, issuing stays after the U.S. Supreme Court has granted certiorari in other cases on dispositive legal

---

Plaintiffs claim they were unaware that a consumer report would be obtained on them, or that they did not provide authorization.  Rather, the gravamen of their allegations is a "bare violation of a federal statute," the question squarely to be addressed in *Spokeo*.  If Plaintiffs claim a "concrete harm" by virtue of an alleged statutory violation that caused no actual injury, they are engaged in the "circular approach to injury" that the Supreme Court will resolve in *Spokeo*.  Pet. for Writ of Certiorari at 21 (Exhibit C) ("Congress may not create the necessary underlying injury by fiat").

issues. *See, e.g.*, *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (staying district court action pending U.S. Supreme Court review of common question of law on the reach of the Alien Tort Statute). Likewise, in *Johns v. Evergreen Presbyterian Ministries, Inc.*, 826 F. Supp. 1050 (E.D. Tex. 1993), the district court was faced with a question of whether the Civil Rights Act applied retroactively. *Id.* at 1051. The Supreme Court had recently granted certiorari in another case to decide whether the Act applied to cases "pending . . . when the Act became law." *Id.* at 1051 n.1. The court analyzed the likely impact of the pending Supreme Court decision in providing guidance to an "unsettled" area of the law, *id.* at 1058, and held that "simple prudence compel[s] the Court to stay this action until the Supreme Court renders its . . . decision next Term." *Id.* at 1061. Given *Spokeo*'s potential to settle the law in this case, a stay is warranted.

Similarly, the Eastern District of Michigan has relied on *Michael* to grant stays when higher courts are reviewing common questions of law. *See Monaghan v. Sebelius*, No. 12-15488, 2013 WL 3212597, at *1 (E.D. Mich. June 26, 2013) (Exhibit D). In *Monaghan*, the defendants sought a stay because two other cases were pending before the Sixth Circuit where "the factual circumstances and central legal issues in both cases [were] substantially similar to those in this case." *Id.* The district court granted the motion to stay, notwithstanding the "potential

differences" between the cases identified by the plaintiff.  *Id.*  The court reasoned that the "substantial[] similar[ity]" between the cases meant that the

> Sixth Circuit's decision in either [case on review] will likely provide guidance in the Court's decisions in this case and will narrow the issues the Court must resolve. [] Given this, it would be at odds with notions of judicial economy for this Court to proceed in this case and risk reaching an ultimate resolution that is inconsistent with precedent the Sixth Circuit creates shortly thereafter.

*Id.* at *1-*2.  Plaintiffs' claims in the instant case are more than "substantially similar; they are ***identical*** to the extent they implicate the ***same*** provision of the FCRA and a central legal issue (i.e., whether plaintiffs have standing in either case because plaintiffs in both cases do not allege, nor can they evidence, concrete harm).

Moreover, stays may be appropriate even where the case pending before a higher court would not entirely dispose of the instant Plaintiffs' claims.  *See Beydoun v. Holder*, No. 14-cv-13812, 2015 WL 631948, at *3-4 (E.D. Mich. Feb. 13, 2015) (Exhibit E).  In *Beydoun*, the court granted a stay of a case challenging certain aspects of the Transportation Security Administration's ("TSA") security directives for airline passenger screening.  The district court stayed the case, however, because another case was pending before the Sixth Circuit regarding jurisdiction for challenging TSA determinations.  *Id.* at *2.  In opposing the motion to stay, the plaintiff asserted that the allegations were "sufficiently distinguishable from those in [the case on review before the Sixth Circuit]," but the court rejected

19751493v.6

this argument, finding that a "significant portion of [plaintiff's] complaint" overlapped.  *Id.* at *3.  Further, the court found that even if the case before the Sixth Circuit "fails to be dispositive of all issues in this case, its ruling is still likely to significantly simplify this case."  *Id.* at *4.

Considering the question presented by the *Spokeo* petition, and the overlap in FCRA claims for statutory damages between *Spokeo* and the instant case, Plaintiffs cannot avoid the fact that a *Spokeo* ruling will almost certainly affect their ability to bring their claims.  Even if, in opposing this Motion, Plaintiffs attempt to distinguish a possibly adverse *Spokeo* ruling from this case (an effort that in any event will be fruitless), *Beydoun* demonstrates that the legal issues to be resolved by an impending higher court ruling need not be identical in order to justify a stay.

## 2.  A Stay Serves The Interests Of Judicial Economy

In order to promote judicial efficiency, cases that are "massive and complex" are particularly well-suited to stays pending higher court review of shared legal questions.  *Michael*, 325 F. Supp. 2d at 832.  This case involves a huge potential class, and will implicate substantial questions of ascertainability.  *See* Sec. III.B.5, *infra*.  Moreover, apart from the standing question presented by *Spokeo*, this case will implicate a legal question of whether Plaintiffs' allegations even state a claim for relief.  *Compare Smith v. Waverly Partners*, Civ. No. 3:10-

CV-00028-RLV-DSC, 2012 WL 3645324, at *5-6 (W.D.N.C. Aug. 23, 2012) (Exhibit F) (holding that a liability release was unenforceable but did not mean the disclosure violated the FCRA) *with Singleton v. Domino's Pizza,* Civ. No. 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (Exhibit G) (holding that liability release does violate the FCRA).

Stated differently, if this case is not stayed, the next six months to a year will absorb a substantial amount of the Court's time and resources on discovery disputes, and depending on the case schedule, perhaps even dispositive motions and class certification motions. As the court in *Michael* noted, "[t]he Supreme Court's answer to the question of law before it could negate the need for this Court to delve into the vast majority of the legal issues presented in those filings. *It makes little sense to undertake the herculean task of plodding through the motions when one decision by the Supreme Court could invalidate the entire case*." 325 F. Supp. 2d at 832-33 (emphasis added). Where a higher court's ruling will "have precedential effect . . . [and] resolve at least some of the claims before the Court," judicial economy favors the stay. *Cf. Beydoun*, 2015 WL 631948 at *4 (Exhibit E). This Court should not spend its time on this case when the impending decision in *Spokeo* could establish that Plaintiffs have no standing.

### 3.     The Public Interest Is Served By A Stay

The public interest is likewise best served by a stay.  The public interest is vindicated by conserving limited judicial resources and avoiding adjudication of cases that may soon be disposed of by a higher court ruling.  This is particularly so with a large and complicated case that could consume substantial amounts of this Court's time and energy.  Admittedly, the public has an interest in plaintiffs receiving expeditious adjudication of their claims, but this Motion does not seek an indefinite stay, or a stay pending review by a circuit court that could take years to complete.  Rather, the Supreme Court will hear *Spokeo* next term, and in all likelihood a decision will be published less than a calendar year from now.  Moreover, the public has an interest in consistency in judicial determinations.  Without granting the requested stay, this Court may be asked to rule on substantive issues based on current Sixth Circuit law, only to see that precedent overturned months or even weeks later.

### 4.     The Plaintiffs Do Not Suffer Prejudice From A Stay

Plaintiffs cannot credibly claim prejudice from having to wait slightly longer to pursue their claims, ***because they claim no concrete harm to begin with***. Plaintiffs do not seek actual damages, but rather, statutory and punitive damages. FAC ¶ 47.  The FAC thus seeks only to vindicate an alleged technical violation of the FCRA ***that caused no harm***.  In the absence of redressing concrete harm, a

short stay of a reasonably knowable duration — likely to be no more than six months, and unlikely to exceed a year — does not constitute unfair prejudice to Plaintiffs. "[T]he individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.

Plaintiffs are likely to argue that, under current Sixth Circuit law, they have standing to proceed. *See Beaudry*, 579 F.3d at 705-07. Hence, they would argue, a stay would prejudice them by preventing them from proceeding with litigation that they currently have a right to pursue. That argument, however, runs squarely into the fact that the Supreme Court is about to decide whether plaintiffs who lack concrete harm have standing. If Plaintiffs' claims were attempting to redress concrete harm, reliance on current Sixth Circuit law would be more convincing. But denying this Motion and permitting the Plaintiffs to proceed would be nothing more than allowing them to attempt to "run the clock" on a potentially adverse Supreme Court decision when their standing in federal court is tenuous.[3]

---

[3]/    Plaintiffs may point to the recent decision by a Florida district court not to stay an FCRA case pending *Spokeo*, on the grounds that *Spokeo* does not yet represent a change in the law. *See Speer v. Whole Food Market Group, Inc.*, No. 8:14-cv-3035-T-26TBM, 2015 WL 2061665, at *1 (M.D. Fla. Apr. 29, 2015) (Exhibit H). However, given the uncertainty in the law, the superior approach under these circumstances is caution and the conservation of judicial resources. Indeed, other courts considering FCRA claims have recently, *sua sponte*, sought additional briefing from the parties regarding whether the lack of an injury-in-fact is fatal to plaintiffs' claims. *See, e.g.*, *Smith et al. v. Triad of Alabama*, No. 1:14-

Furthermore, a stay is less likely to prejudice Plaintiffs because the discovery process has just begun. *See LaSala*, 399 F. Supp. 2d at 421 (stay appropriate in part because non-moving party had "not yet incurred significant cost or expended much effort in this action, as proceedings have barely begun.").[4] And although Plaintiffs are likely to dispute this, the most likely scenario is that their interests are ***protected***, rather than prejudiced, by a stay. Considering the substantial amount of resources that will go into this case in the next six-to-twelve months if not stayed, likely including extensive motions practice, Plaintiffs and their counsel could invest significant time and money in a case that ultimately has to be dismissed for lack of standing. A short stay to await a precedential ruling is thus in each party's interest.

### 5. Kelly Would Suffer Substantial Prejudice Absent A Stay

Under *Landis*, this Court must also evaluate the "hardship or inequity" on the moving party if a stay is denied. 299 U.S. at 255. Here, if a stay is denied,

---

cv-324-WKW-PWG, Dkt. 32 (M.D. Ala. May 1, 2015) (Exhibit I). This demonstrates a concern among district courts regarding the viability of claims like those in the instant case, which cuts in favor of staying this case pending further guidance from the Supreme Court.

[4] To the extent Plaintiffs claim that prejudice could occur because a delay in conducting discovery could lead to degraded evidence, two mitigating factors apply. First, a litigation hold is in effect at Kelly, and second, the stay will be short. Waiting an additional six-to-twelve months is unlikely to meaningfully affect the quality of evidence. Regardless, Kelly would be agreeable to meeting and conferring with Plaintiffs to ensure that any evidence not yet identified by Plaintiffs as important to their case, and that is within Kelly's possession, custody or control is adequately preserved during the period of a stay.

Kelly will be forced to defend a massive class action, with the substantial possibility that any "interim victor[ies] plaintiffs might have reached here in the meantime would have been temporary and meaningless." *Michael*, 325 F. Supp. 2d at 833. Defending against a case of this size and complexity works a hardship on Kelly if, a mere six months from now, Plaintiffs are found to lack standing. Several factors affect the complexity of Kelly's defense of this case.

First, the potential putative class size is enormous. Between July 18, 2012 (the start of the putative Class Period, FAC ¶ 39) and January 23, 2014 (the date after which Kelly would not, in the ordinary course of business, be using a Form e336 that contained the allegedly extraneous language), Kelly procured consumer reports on nearly 300,000 individuals for temporary staffing purposes.[5] Declaration of Melissa Hammond ("Hammond Decl.") (Exhibit J) ¶ 5; Declaration of Linda Bartalucci-Phelps ("Bartalucci-Phelps Decl.") (Exhibit K) ¶ 3. As explained further below, it is extremely difficult for Defendant to determine which of those individuals meet the qualifications for putative class members, but nevertheless, Defendant avers that hundreds of thousands of those individuals may be considered putative class members. Defending a class action of that size will

---

[5]/  Based on the timing of when Kelly removed the allegedly extraneous language from its Form e336, Kelly believes the putative class size would not exceed 300,000. However, ***determining*** membership based on the definition of the putative class proposed in the FAC implicates closer to a half-million individuals. Bartalucci-Phelps Decl. ¶ 2.

necessarily require Kelly to expend substantial resources.  To date, Defendant has not discovered an automated process by which it could evaluate potential class members.  The discovery process alone will be incredibly burdensome.

Second, despite the size of the potential putative class, not all of those individuals are putative class members, and ascertaining putative class membership will be a very difficult process.  During the putative Class Period, Kelly had multiple versions of Form e336 in use, some of which contained the allegedly extraneous language, and others that did not.  Hammond Decl. ¶¶ 3-5.  Kelly's electronic database, Kelly Staff Net, does not track which version of Form e336 an individual signed.  *Id.* ¶ 6.  Furthermore, some individuals likely signed multiple forms and possibly multiple versions of Form e336.  *Id.* ¶ 7.  Thus, the only way to determine whether or not individuals are putative class members is to review hundreds of thousands of individual paper and electronic files and could potentially require inquiries of Defendant's branch managers and even branch staff.  *Id.* ¶¶ 8-10.  Should this class be certified,[6] Kelly's undertaking to determine whether a given individual for whom a consumer report was generated is a putative class member is going to be tremendously burdensome and expensive.  It would be a substantial hardship and inequitable to require Kelly to expend those resources on

---

[6]/    Kelly will contest class certification at the appropriate time, whether or not a stay is granted.

19751493v.6

a case where the Supreme Court is poised to find that Plaintiffs cannot bring their claims.

Third, as mentioned previously, in addition to the legal question of Plaintiffs' standing, there is also a question of whether Plaintiffs' allegations state a claim. *See* Sec. III.B.2, *supra*. As part of its defense, therefore, Kelly will eventually have to engage in dispositive motion practice (as well as class certification motions), which may be rendered superfluous by what could be a nearly contemporaneous Supreme Court ruling in *Spokeo*.

## IV.   <u>CONCLUSION</u>

In determining whether to grant a stay, this Court must balance the likelihood that an impending higher court decision will affect the instant claims, the judicial economy to be achieved by a stay, and the respective impacts of a stay on the moving party, the non-moving party, and the public. All of these factors favor a stay. The *Spokeo* decision will likely provide binding authority on whether Plaintiffs have standing, which means there is substantial judicial economy to be saved by staying these proceedings, which in turn serves the public interest. The prejudice to Plaintiffs does not exist, or is at most slight, considering that they claim no concrete harm and the stay would be for a relatively short period. Finally, the prejudice to Kelly by not staying this case is significant, considering the substantial resources that would have to be expended defending against a case that

Plaintiffs may shortly be found to have no right to prosecute.  For these reasons, the Defendant respectfully requests that this Court grant its Motion to stay pending the Supreme Court ruling in *Spokeo*.

                 Respectfully submitted,

Dated:       May 22, 2015            SEYFARTH SHAW LLP

                               By:/s/ Gerald L. Maatman, Jr.
                                  Gerald L. Maatman, Jr. (Admitted)
                                  gmaatman@seyfarth.com
                                  David J. Rowland (Admitted)
                                  drowland@seyfarth.com
                                  Pamela Q. Devata (Admitted)
                                  pdevata@seyfarth.com
                                  131 South Dearborn Street
                                  Suite 2400
                                  Chicago, Illinois  60603
                                  Telephone:  (312) 460-5000
                                  Facsimile:  (312) 460-7000

Laura J. Maechtlen (Admitted)
lmaechtlen@seyfarth.com
Michael W. Stevens (Admitted)
mwstevens@seyfarth.com
Shireen Yvette Wetmore (Admitted)
swetmore@seyfarth.com
SEYFARTH SHAW LLP
560 Mission Street, 31st Floor
San Francisco, California  94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

Michael L. Weissman (P51437)
mweissman@fwslaw.com
FINKEL WHITEFIELD SELIK
32300 Northwestern Highway
Suite 200
Farmington Hills, MI  48334-1567
Telephone :  (248) 855-6500
Facsimile:  (248) 855-6501

ATTORNEYS FOR DEFENDANT
KELLY SERVICES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Ian B. Lyngklip, Esq.
Lyngklip Assoc. Consumer Law
Center, PLC
24500 Northwestern Highway,
Suite 206
Southfield, MI  48075
Telephone:  (248) 208-8864
Email:
ian@michiganconsumerlaw.com

E. Michelle Drake, Esq.
Anna P. Prakash, Esq.
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  (612) 256-3200
Facsimile:  (612) 338-4878
Email:  drake@nka.com

  /s/ Gerald L. Maatman, Jr.

19751493v.6

22