## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| LASANDRA HILLSON, STEVEN BOHLER, and ASHLEY SCHMIDT, *individually and as representatives of the class,* | Case No. 2:15-cv-10803-LJM-APP |
| Plaintiffs, | Hon. Laurie J. Michelson<br>Magistrate Judge Anthony P. Patti |
| vs. | |
| KELLY SERVICES, INC. | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23, Plaintiffs LaSandra Hillson, Steven Bohler, and Ashley Schmidt ("Plaintiffs") hereby respectfully move the Court for an Order: (1) granting final approval of the Parties' Settlement; (2) certifying the proposed Settlement Class for settlement purposes only; (3) dismissing Plaintiffs' and the Class Members' claims against Defendant with prejudice; (4) approving the settlement payments for distribution to the Class Members who returned timely, valid Claim Forms; and (5) retaining jurisdiction over the implementation and enforcement of the Settlement. Defendant Kelly Services, Inc. does not oppose this Motion.

1

## <u>MEMORANDUM IN SUPPORT</u>

### STATEMENT OF ISSUES PRESENTED

Whether the Parties' Settlement should receive final approval from the Court.

**AUTHORITY FOR RELIEF SOUGHT**

Federal Rule of Civil Procedure 23(e).

## **INTRODUCTION**

Named Plaintiffs LaSandra Hillson, Steven Bohler, and Ashley Schmidt ("Plaintiffs"), individually and on behalf of the Settlement Class, [1] seek final approval of the Settlement of Plaintiffs' claims against Defendant Kelly Services, Inc. ("Defendant") for alleged violations of the Fair Credit Reporting Act ("FCRA"). On January 23, 2017, this Court preliminarily approved the Parties' Settlement Agreement. (ECF No. 55.) The Court found on a preliminary basis that the terms of the Settlement are "fair and reasonable," and approved the distribution of notice to the Class. (*Id.*)

The response from the Class Members confirms that the Court's preliminary analysis was correct. Out of 221,221 Class Members, approximately 50,147 individuals returned valid and timely Claim Forms, resulting in a claims rate of approximately 23%. This is an incredibly high claims rate for a consumer class action settlement, *see infra* at 22, and is substantially higher than rates that courts in this District have held are indicative of strong support for a settlement. There was only one objection to the Settlement and only ten individuals opted out. This too constitutes compelling evidence that the Settlement is fair, reasonable, and adequate. Should the requested attorneys' fees, costs, and Class Representative

---

[1] Unless explicitly defined herein, all capitalized terms have the same meanings as those set forth in the Parties' Settlement Agreement (ECF No. 37-2).

service awards be granted, and after the Administrator's costs are paid, each Adjudicated Ineligible claimant will receive approximately $203.76 and each other claimant will receive approximately $67.92.  Both the total settlement value and the per-claimant numbers exceed the value of many similar settlements that have been approved.  The Court should grant final approval of the Settlement.

## BACKGROUND

The history of this litigation and Settlement, and the claims involved, are set forth in detail in Plaintiffs' preliminary approval papers and motion for attorneys' fees, costs, and service award, which are incorporated herein by reference, and therefore will be only briefly summarized here.  (*See* ECF Nos. 37, 60.)

## I.    Summary of Procedural History and Settled Claims

On July 18, 2014, Plaintiffs filed their class action complaint in the United States District Court for the Northern District of California, alleging that Defendant had violated 15 U.S.C. § 1681b(b)(2) by procuring background checks on them and putative class members without first providing a disclosure that a report would be obtained in a document consisting solely of the disclosure.  (N.D. Cal. ECF No. 1.)   Specifically, Plaintiffs alleged that Defendant's disclosure contained a liability release and other extraneous information beyond that allowed under the FCRA.  (*Id.*)  On August 19, 2014, the Plaintiffs filed a First Amended

Complaint clarifying their allegations (N.D. Cal. ECF No. 10), which Defendant answered on October 14, 2014 (N.D. Cal. ECF No. 35).

The Parties attended an early mediation with third-party neutral Hon. Layn Phillips of Phillips ADR on February 23, 2015.  Prior to attending the mediation, the Parties exchanged informal discovery and detailed mediation briefs.  (ECF No. 37-1, at ¶ 3.)  The mediation was ultimately unsuccessful, and the Parties returned to litigation.  (*Id.*)  Following this mediation, the Parties stipulated to transfer the case to this Court (N.D. Cal. ECF Nos. 50, 52), and the Parties began to engage in formal discovery.  (ECF No. 37-1, at ¶ 4.)

Defendant moved to stay the litigation in May 2015, pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, No. 13-1339.  (ECF No. 18.)  The Court granted the motion to stay on July 15, 2015.  (ECF No. 29.)  While the stay was in place, the Parties attended a second mediation with third-party neutral Hon. Wayne R. Andersen (Ret.) of JAMS on January 7, 2016.  (ECF No. 37-1, at ¶ 5.)  The Parties again exchanged detailed mediation briefs.  (*Id.*)  The Parties agreed to a settlement in principle at the mediation and subsequently engaged in arms' length settlement discussions, facilitated by Judge Andersen, ultimately executing the Settlement Agreement in June 2016.  (ECF No. 37-1, at ¶ 7, ECF No. 37-2.)

## II.    Summary of Settlement Terms

In its preliminary approval order, the Court certified, for settlement purposes, the following Settlement Class:

> All persons on whom Defendant procured a consumer report pursuant to the Fair Credit Reporting Act during the period from July 18, 2012 through January 23, 2014, and whose initial hire date with Defendant was during the period of time when Defendant was providing new applicants with a disclosure form that contained a liability release.

(ECF No. 55.)

In consideration for the release of the Class Members' claims, Defendant has agreed to provide monetary and non-monetary relief.  First, Defendant will pay $6,749,000.00 into a common settlement fund.  (ECF No. 37-2, at ¶ 45.)  After any court-approved deductions for attorneys' fees, litigation costs, administration costs, and Class Representative service awards, the fund will be distributed *pro rata* to all Class Members who returned properly completed, timely Claim Forms.  (*Id.* ¶¶ 46-49.)  Those Class Members who were Adjudicated Ineligible (meaning that Defendant's data management system shows them as having a background check result of anything other than "favorable") will receive an allocation that is three (3) times that of those who were not.  (*Id.* ¶ 46.)  Should the requested attorneys' fees, costs, and Class Representative service awards be granted, and after the Administrator's costs are paid, each Adjudicated Ineligible claimant will receive approximately $203.76 and each other claimant will receive approximately $67.92.

Should any funds remain after the close of the check negotiation period, the remaining funds (less additional administrative expenses) will be redistributed to those Class Members who cashed their original checks, as long as each check will be at least $10. (ECF No. 37-2, at ¶ 50.) Otherwise, the remaining funds will be donated to the Parties' designated *cy pres* recipient, Flint STRIVE. (*Id.*)

Second, the Settlement affords non-monetary relief. Defendant has agreed not to include a liability release in its FCRA disclosure form for a period of five years, unless or until there is a material change in the law. (*Id.* ¶ 42.) Further, since Notice was mailed, Class Members have been able to request free copies of the background checks Defendant procured on them, through the Settlement Website and toll-free telephone line. (*Id.* ¶ 54.) There have been over 1,765 requests received to date through the Website, or by mail to the Administrator. (Declaration of Settlement Administrator ("Admin. Decl.") ¶ 13.) Defendant will maintain the toll-free call center to respond to these requests for an additional eight months following the Settlement's Effective Date. (ECF No. 37-2 ¶ 55.) Defendant has also agreed to designate a dedicated "Consumer Reports Information Operator." (*Id.* ¶ 43.) This person, or someone in a substantially similar role, will, for a period of three years, be responsible for timely responding to inquiries on a nationwide basis and providing information about how its

applicants or temporary employees can procure any consumer reports Defendant obtained about them. (*Id.*)

## III.   Class Notice and Reaction

On February 24, 2017, the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("the Administrator"), sent the court-approved Postcard Notice and Adjudicated Ineligible Postcard Notice to Class Members via first-class U.S. mail. (Admin. Decl. ¶ 5.) A total of 221,221 Postcard Notices were mailed. (*Id.*) When Notice was mailed, Class Counsel caused the Settlement Website to go live, which provided Class Members with general information about the Settlement, court documents, copies of the Notices (in English and Spanish) and important dates and deadlines. (Declaration of E. Michelle Drake ("Drake Decl.") ¶ 3.) The Website also contained links where Class Members could file a Claim Form, update their address, and/or request a copy of their consumer report. (*Id.*) Also on February 24, 2017, the Administrator established a toll-free telephone line, which provided responses to frequently asked questions, and allowed Class Members to request their consumer reports from Defendant. (Admin. Decl. ¶ 6.) On June 20, 2016, the Administrator implemented notice to the appropriate officials as required by 28 U.S.C. §§ 1715(a) and (b). (*Id.* ¶ 4.)

On March 27, 2017, two weeks before the deadline for Class Members to file objections or opt out, Plaintiffs filed their Motion for Attorneys' Fees, Costs,

and Class Representative Service Awards (ECF No. 60), which was promptly posted on the Settlement Website. (Drake Decl. ¶ 4.) No Class Members objected to those requests.

The deadline for Class Members to postmark any opt-outs passed on April 10, 2017. There were ten (10) timely opt-outs received. (Admin. Decl. ¶ 11.) The deadline for objections to be postmarked was also on April 10, 2017. Notably, despite the size of the Settlement Class, there was only one *pro se* objection. (ECF No. 59.) The deadline for Claim Forms to be postmarked was on April 25, 2017. As of June 23, 2017, there were 41,193 timely, valid Claim Forms received from Class Members who were not designated Adjudicated Ineligible and 8,954 timely, valid Claim Forms received from Class Members who were Adjudicated Ineligible. (Admin. Decl. ¶ 12.)

Class Members who were not initially determined to be Adjudicated Ineligible were also afforded the opportunity to challenge that designation and certify that they were in fact terminated or not hired/placed by Defendant and had an unfavorable background check. These challenges were to be submitted in writing by April 25, 2017. (ECF No. 37-2, at ¶ 60.) Class Members submitted 42 timely certifications. (Admin. Decl. ¶ 14.) Defendant challenged 22 of the certifications. Those 22 Class Members were mailed letters requesting further explanation and/or documentation by June 15, 2017 to support their claim. (*Id.* ¶

14.)   As of June 23, 2017, eight Class Members responded.   (*Id.*)   Their certifications will be resolved ten days prior to the final fairness hearing.   (ECF No. 37-2, at ¶ 61.)

## IV.   Relief to be Provided After Final Approval

Defendant will establish the common fund within five business days of the Effective Date.   (*Id.* ¶ 74.)   Within twenty days of the Effective Date, the Administrator will mail checks to all Class Members who returned timely, valid Claim Forms.   (*Id.* ¶ 75.)

## <u>ARGUMENT</u>

Courts favor the voluntary resolution of litigation through settlement, particularly in the class action context.   *See UAW v. Gen. Motors Corp.*, No. 05-cv-73991, 2006 WL 891151, *12 (E.D. Mich. March 31, 2006) (*Gen. Motors I*) (citing cases).   Fed. R. Civ. P. 23(e) requires judicial approval for the compromise of claims brought on a class basis.   The Sixth Circuit follows a three-step process for approving class action settlements, the first two of which have already been accomplished: (1) there must be preliminary approval of the proposed settlement; (2) the class members must be provided notice of the proposed settlement; and, (3) after a hearing, there must be final approval of the settlement.   *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).   The standard for approval is "whether the settlement is fair, adequate, and reasonable . . . [and also] whether the

interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (internal quotations omitted). Before granting final approval to a settlement, the court should consider the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (*Gen. Motors II*); *Williams*, 720 F.2d at 922-923. For the reasons set forth below, each of these factors weighs in favor of the Settlement, and thus it should be finally approved.

## I.   The Procedure by Which the Settlement Was Reached Indicates that the Settlement Is Fair

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014) (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)); *see also In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) (citing *Newberg on Class Actions* § 11.51). In this case, there are affirmative indications that the Settlement is untouched by fraud or collusion. As noted above, the Parties' Settlement Agreement was only formalized after there was an informal and formal exchange of documents and information, two mediations and subsequent negotiations

conducted with the assistance of a third-party neutral, the exchange of detailed mediation briefs, and the briefing of Defendant's motion to stay. This timeline of events ensured that the Parties were well apprised of the facts and of each side's position on litigation and settlement prospects. These circumstances are indicative of a non-collusive settlement. *In re Cardizem*, 218 F.R.D. at 530 (finding the fact that settlement was reached after multiple mediations and subsequent negotiations facilitated by mediator supported settlement); *Connectivity Sys., Inc. v. Nat'l City Bank*, No. 08-cv-1119, 2011 WL 292008, *5 (S.D. Ohio Jan. 26, 2011) (finding same). Additionally, attorneys' fees and class representative payments were not discussed or negotiated until after all other material terms of the Settlement had been agreed upon, eliminating the possibility of a trade-off between compensation for the Class Members and compensation for Class Counsel and the Plaintiffs. (ECF No. 37-2, at ¶¶ 47-48; Drake Decl. ¶ 5.)

## II. The Settlement Allows the Parties to Avoid Complex, Lengthy, and Expensive Litigation

"For class actions in particular, courts view settlement favorably because it 'avoids the costs, delays and multitudes of other problems associated with them.'" *In re Delphi Corp. Secs., Derivative & ERISA Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) (citing *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1013). In evaluating a settlement's adequacy, "[t]he Court must also consider the risks,

expense, and delay the plaintiffs would confront if they pursued their claims and trial and through appeal." *Dick*, 297 F.R.D. at 295.

The prospect of delay in litigating the case to a final conclusion weighs heavily in favor of settlement approval.  While this action has been pending for two years, litigation was stayed for much of that time.  Much remains to be done before this case could reach a resolution in litigation.  Formal discovery, expert discovery, dispositive motions, and a motion for class certification all have yet to occur.  In addition, there would need to be a trial and, most likely, appeals.  Each of these stages presents risks to Plaintiffs' claims and imposes expense and delay. Settling now is therefore advantageous for all Parties.  *See Connectivity Sys.*, 2011 WL 292008, at *3 ("[T]he difficulty Named Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement Agreement."); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1013 (finding the fact that motion practice, appeals, trial preparation, and trial remained, should litigation continue, weighed in favor of settlement approval).

## III. The Parties Exchanged Sufficient Documents and Data Prior to Entering into the Settlement

To ensure the parties have had access to sufficient information to evaluate their case, the stage of proceedings and discovery undertaken must be considered. Prior to the Settlement being reached here, the Parties had engaged in substantial

exchanges of information and documents and had the opportunity to assess each side's strengths and weaknesses, as well as the merits of the claims and defenses in the case.  Among other things, prior to settling, the Parties had: (1) investigated the claims; (2) researched, drafted, and amended the complaint; (3) met and conferred regarding discovery; (4) researched and briefed a motion to stay the case; (5) exchanged and reviewed pre-mediation written and documentary discovery; (6) exchanged and reviewed formal written discovery responses and document productions; (7) researched and drafted multiple comprehensive mediation briefs, each of which canvassed the applicable law and risks of litigation both as to certification and the merits; (8) prepared for and participated in two separate mediation sessions; and (9) engaged in extended settlement negotiations.  These circumstances support approval.  *Gen. Motors I*, 2006 WL 891151, at *19 (noting that "informal discovery engaged in both before and after litigation commenced" resulted in "significant information available to the parties to negotiate their compromise" and weighed in favor of settlement); *Dick*, 297 F.R.D. at 296 ("Such negotiations allowed all parties to fully explore the factual and legal grounding of their positions in multiple mediation sessions.  Such an exchange of information facilitated a candid perspective on the merits and risks of the parties' respective cases and allowed them to agree upon an appropriate settlement value.").

**IV.    The Settlement Represents an Exceptional Recovery, As Success on the Merits Was Far from Assured**

Courts "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Gen. Motors II*, 497 F.3d at 631 (quotations omitted).

The Settlement here provides for a common fund of $6,749,000.00, which will result in net payments of approximately $67.92 for Class Members who were not Adjudicated Ineligible, and $203.76 for Class Members who were Adjudicated Ineligible if the Court grants the requested fees, costs, and service awards. Plaintiffs filed this case seeking statutory damages under the FCRA, which provides for damages of between $100 and $1,000 if the plaintiff can prove that the violation was willful. 15 U.S.C. § 1681n(a)(1).  If Plaintiffs were to prevail at trial, each class member's recovery would likely be much closer to $100 than to $1,000. The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co., Inc. FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Okla. Sept. 20, 2010).  Given the breadth of

violations that fall within the $100 - $1,000 range, as well as the size of the Class here, it is unlikely that Plaintiffs would achieve an award of statutory damages which, on a per person basis, would substantially exceed $100 per person.

The settlement allocation addresses the fact that individuals with unfavorable background checks had potentially harmful information disclosed and therefore suffered a greater privacy breach in relation to the violation.  Overall, both the gross settlement amount and the per-class-member amounts compare extremely favorably to other settlements with similar claims.  In terms of the relief that individual Class Members who made claims can expect to receive, the Settlement also compares extremely favorably to other settlements that have received approval.  (*See* ECF No. 37, at 23-25, citing eight settlements in cases involving stand-alone disclosure claims where the gross per class member recovery (pre-attorneys' fees and expenses) ranged from $10-$43.)

The Settlement's provision of valuable non-monetary relief also weighs in favor of approval.  Defendant has agreed to modify the form at issue in this case to ensure future individuals receive a disclosure without a liability release.  Defendant's designation of a dedicated "Consumer Reports Information Operator" will ensure that Class Members and future applicants and temporary employees have easy access to their background checks.  Further, Class Members received the option of free assistance in connection with requesting copies of their consumer

reports.  This is clearly valuable to the Class, as evidenced by the approximately 1,765 Class Members who have requested their reports to date.  These non-monetary benefits would likely not have been available to Class Members if litigation were to continue, as the question of whether the FCRA permits a private right of action for injunctive relief is unresolved.  *Beaudry v. TeleCheck Sys.Inc.*, 579 F.3d 702, 709 (6th Cir. 2009); *Greear v. Equifax Info. Servs., LLC*, No. 14-11988, 2014 WL 3809475, at *1 (E.D. Mich. Aug. 1, 2014) (citing cases).

When balanced against the remaining hurdles in adversarial litigation, the Settlement becomes even more impressive.  Unlike other consumer statutes, in order to recover statutory damages under the FCRA, Plaintiffs must prove not only that Defendant violated the FCRA, but also that Defendant's violations were willful.  This is a very high standard, and one on which FCRA plaintiffs can lose, even after a successful verdict at trial.  *See Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict finding conduct to be willful under the FCRA); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment.").  Plaintiffs expect that if the matter were litigated, Defendant would vigorously contest the question of willfulness.  While Plaintiffs continue to believe

they would have ultimately prevailed on this issue, they recognize the inherent risk of litigation and potentially proceeding to trial on this issue.

Further, at the time of the Settlement, Plaintiffs faced risks related to subject matter jurisdiction. The Settlement was negotiated in the shadow of the Supreme Court's consideration of *Spokeo*, which addressed Article III's injury-in-fact requirement, and the litigation was stayed pending the result. A defendant-friendly result in *Spokeo* could have significantly impacted this lawsuit, and, in the worst case scenario, potentially could have prevented the Class Member from receiving any recovery at all. The Settlement took into account and protected against these risks. (*See* ECF No. 37-2, at ¶ 77 (allowing enforcement of the Settlement in a mutually agreeable court of competent jurisdiction).)

A recovery of a substantial percentage of the likely award if the case had proceeded all the way through final judgment is an excellent result for the Class Members, especially when that recovery comes relatively early in the litigation process. By nature, a settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *In re Cardizem*, 218 F.R.D. at 523 (quoting *Williams*, 720 F.2d at 922). Here, more than 50,000 Class Members will receive immediate, guaranteed payments. "Given the time value of money, a future recovery, even one greater than the proposed Settlement Amount, may be less valuable to the Settlement Class than receiving

the benefits of the Settlement Agreement now." *Connectivity Sys.*, 2011 WL 292008, at *4; *see also N.Y. State Teachers' Retirement Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016) ("As the Settlement provides an immediate, significant, and certain recovery for Class Members, this [] favors the Court's approval of the Settlement."). In light of the risks of continued litigation and the substantial benefits provided for, this Settlement is clearly in the best interests of the Plaintiffs and the Class Members and should be approved.

## V.   The Settlement Is Supported by Class Counsel and the Class Representatives

The Class Representatives, who have stayed abreast of developments in the case and have carefully reviewed the Settlement, fully support it. (*See* ECF Nos. 64-66.) This weighs in favor of approval of the Settlement. *Dick*, 297 F.R.D. at 297 ("[T]he Settlement is . . . endorsed by the Representative Plaintiffs, neither of whom have objected to this Settlement Agreement or moved to withdraw from the litigation. This factor points toward approval of the Settlement.").

Class Counsel also support the Settlement and strongly believe that it is in the best interests of the Class Members. Where, as here, the Parties are represented by counsel who have significant experience in class action litigation, settlements, and FCRA cases in particular,[2] and no evidence of collusion or bad faith exists, the

---

[2] *See* ECF Nos. 61, 61-3, 62, 62-3, and 63 for details on counsel's experience.

judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Dick*, 297 F.R.D. at 296 ("Class Counsel has considerable experience in this area of the law, as well as in settling class actions of this sort. Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations is appropriate." (internal quotations omitted)); *N.Y. State Teachers*, 315 F.R.D. at 238 ("Lead Counsel has extensive experience handling . . . complex class action litigation. . . . As such, Lead Counsel's endorsement of the Settlement is entitled to significant deference"); *UAW v. Ford Motor Co.*, No. 07-cv-14845, 2008 WL 4104329, *26 (E.D. Mich. Aug. 29, 2008) (same).

## VI.   The Reaction of the Class Members Is Positive

Of the approximately 221,221 Class Members, only 10 opted out, and only one objected. These are small numbers in comparison to the size of the Settlement Class (0.005% of the total), which decidedly weighs in favor of final approval. *In re Cardizem*, 218 F.R.D. at 527 ("If only a small number of objections to a class action settlement are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *27 (E.D. Mich. July 13, 2006) ("[L]ess than one half of one percent-submitted an objection to the Settlement Agreement. This very small level

of opposition is another reason to conclude that the Settlement is fair, reasonable, and adequate.").

Further, approximately 50,147 Class Members returned valid, timely Claim Forms, resulting in an approximately 23% claims-filing rate.  This rate compares extremely favorably with other settlements that have required claim forms, demonstrating Class Members' approval of the settlement.  *See*, *e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289-90 (6th Cir. 2016) (noting testimony of reputable settlement administrator that in its experience with over 3,000 settlements, 99% of which were claims-made, the median response rate is 5 to 8 percent); 2 McLaughlin on Class Actions § 6:24 (11th ed.) (citing cases and noting that "[c]laims-made settlements typically have a participation rate in the 10-15 percent range").  A claim form was appropriate here due to the nature of the Settlement Class – temporary employees – and the fact that the Class Period began nearly four years ago.  The use of a claim form helps ensure that Class Members who are sent checks will actually receive them.  Claim forms are commonly used in class action settlements and are routinely approved.  *See*, *e.g.*, *Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012).

The one *pro se* objection received, ECF No. 59, should be overruled.  The objector, Ms. Mosier, does not identify any particular provision of the Settlement she objects to, stating only that she believes that Defendant ran background checks

as a "safety measure" and "should not be penalized for it." (*Id.*)  This statement reflects a misunderstanding of the nature of the Settlement.  Defendant has agreed to this resolution of the lawsuit, and the Settlement is not a penalty or punishment. Moreover, Plaintiffs' allegations are based not on Defendant's decision to run background checks, but on the contents of Defendant's disclosure form. *Leonhardt*, 581 F. Supp. 2d at 840 (overruling objection based on "flawed premises").  In any event, Ms. Mosier does not provide any statements as to any provisions of the Settlement Agreement she finds unfair, or any basis for withholding approval of the same.   General statements of objection without specificity or support are insufficient to demonstrate inadequacy or unfairness. *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) ("General objections without factual or legal substantiation carry little weight" (citing *Newberg on Class Actions* § 11.58 (3d ed.))); *Connectivity Sys.*, 2011 WL 292008, at *6-7 (overruling objection that raised issues unrelated to the fairness, reasonableness, and adequacy of the settlement, and noting that "[a] settlement is 'presumptively reasonable' once preliminary approval is entered and '[a]n individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable'" (citing *Bronson v. Bd. of Ed.*, 604 F. Supp. 68, 71-71 (S.D. Ohio 1984)).

Every Class Member except one supports the Settlement.  This factor supports final approval.  *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (overwhelming approval of settlement by class members "is entitled to nearly dispositive weight in [the] court's evaluation of the proposed settlement."); *Olden v. Gardner*, 294 Fed. App'x 210, 217 (6th Cir. 2008) (settlement found to be fair in light of 79 objections from 11,000 class members); *Manners v. Am. Gen. Life Ins. Co.*, No. 98-cv-0266, 1999 WL 33581944,*22 (M.D. Tenn. Aug. 11, 1999) (noting, in case in which 24 objections were filed and 0.24% of the class opted out, that "[t]here has been very little opposition to this Settlement . . . This small amount of opposition strongly supports approving the Settlement.").

## VII.  The Public Interest Weighs in Favor of Final Approval

Approval of this class action Settlement is in the public interest.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."  *Dick*, 297 F.R.D. at 297 (quotation omitted).  The Settlement here resolves a complex class action that would require lengthy, costly further litigation to otherwise adjudicate, and provides monetary relief to over 50,000 people, and non-monetary relief to over 220,000.  This resolution is certainly in the public interest, and this factor weighs in favor of approval.

*Manners*, 1999 WL 33581944, at *27 ("The proposed settlement would avoid complex and protracted litigation, provide valuable relief to the Class, and foster the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions. …" (internal citation and quotation omitted)); *Franks v. Kroger Co.* 649 F.2d 1216, 1224 (6th Cir. 1981) (noting the strong public interest in promoting settlement of class actions).

## <u>CONCLUSION</u>

For the reasons set forth herein, the Settlement should be approved.

Respectfully submitted,                    Date: June 26, 2017

BERGER & MONTAGUE, P.C.

<u>/s/ E. Michelle Drake</u>
E. Michelle Drake, MN Bar #0387366*          LYNGKLIP & ASSOCIATES
43 SE Main Street, Suite 505                 CONSUMER LAW CENTER, PLC
Minneapolis, MN 55414                        Ian B. Lyngklip, SBN P-47173
Telephone: 612-594-5995                      24500 Northwestern Hwy, Ste 206
Facsimile: 612-584-4470                      Southfield, MI 48075
emdrake@bm.net                               Tel.: 248-208-8864
*generally admitted*                         ian@michiganconsumerlaw.com

NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar #22084X*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
lukas@nka.com
*generally admitted*

*ATTORNEYS FOR PLAINTIFFS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Date: June 26, 2017

/s/E. Michelle Drake
E. Michelle Drake, MN 0387366
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: 612-594-5999
Fax: 612-584-4470
emdrake@bm.net

*Attorney for Plaintiffs*